NICOLÁS CORTÉS CÓRDOVA, Petitioner; EX PARTE, ALFREDO and FRANCISCA CORTÉS ROSARIO, Appellants, BUENAVENTURA CORTÉS RÍOS ET AL., Appellees.

No. 174. Decided September 28, 1962.

112

*Enrique Igaravidez* for appellants. *Angel Manuel Ciordia* for appellees. *Celestino Iriarte* for appellees heirs Cortés Ostolaza.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE HERNÁNDEZ MATOS delivered the opinion of the Court.

In a judicial administration proceeding of the hereditary property of the predecessor Buenaventura Cortés, prosecuted in the Arecibo Part of the Superior Court, a decision was rendered on March 19, 1959 approving the final report rendered by the accountant-partitioner and an order was issued to proceed with the partition and distribution of the inheritance estate pursuant to that report. In the course of said administration various interlocutory decisions were rendered which later served as basis for the preparation of the final report.

In order to review the final decision and some of the interlocutory orders, the coheirs Alfredo and Francisca Cortés Rosario resorted to this Court with this petition. We decided to review only

"That part of the decision of the court of December 4, 1953, which it applied to the inheritance in this case, and particularly to the legitimate heirs, the provisions of § 767 of the Civil Code after the amendment made to said section by virtue of Act No. 255 of May 10, 1949, since the predecessor died prior to said amendment."

We will set forth the necessary antecedents to understand better the point of law involved in the review. Buenaventura Cortés died on October 9, 1948. He had executed an open will on August 27, 1948, but its designation of heirs was set aside by judgment rendered by the aforesaid Arecibo Part and which we affirmed on September 10, 1952.[1] As a result of this litigation the heirs appeared to be Alfredo and Francisca Cortés Rosario, legitimate children of the deceased, and his ten acknowledged natural children named: Ventura,

---

[1] See *Cortés* v. *Cortés*, 73 P.R.R. 643.

Angel Luis, Cristina, Angel Manuel, Antonio, Roberto, Arturo, and Ernesto Cortés Ostolaza, Buenaventura Cortés Ríos, and Nicolás Cortés Córdova.

In April 1953 the two legitimate children, within the judicial administration proceeding—after the parties presented an inventory and an evaluation of the inheritance estate and a petition for the appointment of a partitioner—filed a petition "respecting the partition of the hereditary estate" in which they requested the approval of the partition "made by the testator in his testamentary provisions ordering the delivery of the property . . . to the different heirs to the extent, way and manner set forth in the preceding allegation. . . ." In that allegation the legitimate children asked the court to determine that they enjoyed the power which was granted them by § 767 of the Civil Code of being able to pay in money or in other property the hereditary share which corresponded to the acknowledged natural children named Buenaventura Cortés Ríos and Nicolás Cortés Córdova.

The trial court in its decision of December 4, 1953 decided that the legitimate heirs, at the time of the partition and distribution of the inheritance, lacked that power. It considered it only as a mere procedural formality to distribute the inheritance, repealed by Act No. 255 of May 10, 1949.

Appellants, the only legitimate children of the deceased, assign the commission of two errors. The first refers to the court's refusal to apply the last paragraph of § 767 of the Civil Code, effective on the date of the predecessor's death, denying them the power to pay the share of the above-mentioned natural children in cash or in hereditary property.

The second error refers to matter which is not within the ambit of the partial review authorized herein. For that reason we will abstain from considering it.

■ In our opinion the first error was committed. The trial court was mistaken in considering that power as a mere procedural formality for the distribution of an inheritance, and which disappeared by operation of Act No. 255 of 1949.

On the date in which the predecessor died, October 9, 1948, § 767 of our Civil Code provided:

"Section 767.—When the testator leaves legitimate children or descendants, and natural children legally acknowledged, each of the latter shall have a right to a portion equal to that pertaining to each of the legitimate children who have not received any advantage or extra portion.

"The portion pertaining to acknowledged natural children shall be paid from the third for free disposition, and should the same be insufficient to cover said portion, the difference shall be paid from the third for advantage or extra portion.

"The legitimate children may pay the portion pertaining to the natural ones in cash, or in other property of the state, according to just rules."

■ By virtue of the third paragraph of the section copied above, a body of eminently substantive provisions, such as our Civil Code, and comprised in a section named "Rights of Illegitimate Children," granted the legitimate children who concur in the inheritance with the acknowledged natural children, the faculty or power to bring within their domain the totality of the property left at the death of their father, paying in cash or in other property of the estate the corresponding share to those acknowledged natural children according to just rules.

As stated by MANRESA in 6 *Comentarios al Código Civil Español* 633 (7th ed. 1951):

"The second paragraph of § 840 [similar to the third paragraph of our § 767] which doctrine seems to us clear and wise, establishes *a right* of the children or of the grandchildren, in short, of the legitimate descendants. The election devolves on them. Certainly, however, if the share is not paid

in cash, the property which is adjudicated should be estimated justly, it should be equivalent to the share, according to just rules, as stated in the section. In the absence of a friendly agreement, an expert appraisal of all the property may be resorted to, and ultimately, the courts will decide." (Italics ours.)

"As to the rest, the purpose of the law in this paragraph is evident. It is to avoid disagreements and issues between legitimate children and natural children due to the partition of the inheritance or of the indivision of the property which in many cases would be imposed among all the heirs."

SÁNCHEZ ROMÁN, in *Estudios de Derecho Civil*, Tome V, Vol. 2 at 912, states:

". . . *It concerns a right,* that is, a faculty, of optional exercise pertaining to legitimate children, which the natural children can not force the former to employ, but which on their part they are bound to accept with the guarantee of just regulation. . . ." (Italics ours.)

SCAEVOLA, in his Vol. XIV, 4th ed., at 887, describes this faculty as "a remedy arbitrated by the Code" to avoid difficulties between the legitimate and the natural heirs. He points out that "it is, then, nothing more than another revelation of the predominance . . . in the financial sphere . . . of legitimate filiation over the natural one."

In his work *Manual de Derecho Civil Español*, Vol. V, at 309 (1957), Professor ESPÍN CÁNOVAS designates it as an authorization to pay in cash the legitimate portion of the acknowledged natural child and a "greater protection to the legitimate family which tends to avoid very possible disagreements between both kinds of children."

BORRELL Y SOLER also consider it as a right of authorization. V *Derecho Civil Español* 298 (1954).

Because of its purpose of maintaining the principle of family unity within the inheritance law, such law resembles the right of redemption among family members. Perhaps it might be compared to a power of condemnation or to the assignment ex lege of the legal portion. At any rate it

amounted to an acquisitive preference granted in favor of the legitimate child respecting the property of the inheritance.[2]

■■ In like manner our Code in its § 765, grants to "the heirs" the faculty to pay to the spouse his share of the usufruct, by assigning to him or her a life annuity, or the income from some specific property, or a capital in cash, as may be determined by mutual agreement, and in default thereof, by judicial decision. Also, the father, who in the interest of his family desires to keep an agricultural, industrial or manufacturing enterprise undivided, may leave it to one of his children, providing that the legal portion of the other children be paid in cash, pursuant to § 1009.

■■ Not until the partition of the inheritance is definitely performed, the share of the acknowledged natural child, in every succession to which the third paragraph of § 767 may be applied, shall be subject or affected by the possibility of the exercise of that faculty which constitutes a right of a substantive character, the holder of which can not be impaired by subsequent legislation. It is not a procedural or adjective proposition of public interest which may be retroactively repealed.

That provision of privilege was sanctioned in the second paragraph of § 840 of the Spanish Civil Code, which became effective here on January 1, 1890. In Spain it is still effective. When the Revised Civil Code of 1902 was approved, the flimsy movement of social improvement prevailing at the time

---

[2] This is not a faculty which may be utilized effectively at all times. It is preconditioned to the requirement of the just regulation and, therefore, in order to proceed with sufficient grounds to exercise said power, the legitimate child must wait until a project of partition is presented with all its operations of inventory, evaluation, liquidation, collation, division, formation of assets, and adjudication. We understand that such a faculty would not exist in the case of a legacy of a certain and determined thing which the testator makes in favor of the acknowledged natural child, in addition to his legal portion, since then the duty is imposed on the heir to deliver the thing bequeathed with all its accessories and in the condition in which it may have been on the death of the testator. Section 805 of the Civil Code.

118

caused the same to be eliminated. But the absence of that privilege and others in our family and inheritance legislation lasted a short time. It was restored by § 14 of the Act of March 9, 1905. In the 1930 edition it continued in effect as the third paragraph of § 767 of the Civil Code. It was again eliminated by Act No. 255 of 1949, which went into effect on August 8 of that year. The modern, social, economic, and equitable trend uprooted it utterly causing it to perish in order to insure, at least before the majesty of the law, the same rights to all the human beings who are children of the very same father.

■ But the repeal of that paragraph in the year 1949, almost a year after the death of Buenaventura Cortés, only had prospective effects and did not prejudice in any way the substantive right acquired by Alfredo and Francisca Cortés Rosario to pay the shares of the acknowledged natural children who are also heirs, either in cash or in property of the inheritance. Section 3 of the Civil Code.

■ The substantive rights involved in a hereditary partition are determined and governed by the laws which prevail at the time of the predecessor's death. Several other ones which might be in effect when the partition is made are not applicable even though in the latter the rights acquired thereunder[3] are not recognized or otherwise regulated.

Appellees' briefs have not convinced us, despite the excellent efforts in that direction, that the right of the legitimate children of Buenaventura Cortés to acquire the legal portions of Buenaventura Cortés Ríos and Nicolás Cortés Córdova, was repealed by Act No. 255 of 1949.

For the reasons stated, the order of the Superior Court, Arecibo Part, of December 4, 1953 will be modified but only with respect to that part which denies the existence

---

[3] See: *Ab Intestato of Ana Garroti Padilla*, 79 P.R.R. 180 (1956); *Torres* v. *Registrar*, 75 P.R.R. 121 (1953); and *Travieso* v. *Del Toro*, 74 P.R.R. 940 (1953) and the cases cited therein on that point; and *Charres* v. *Arroyo*, 16 P.R.R. 777 (1910).

or exercise of the faculty which the third paragraph of § 767 of the Civil Code, effective at the death of the predecessor, granted to the legitimate children of the predecessor to pay the shares of those two natural heirs, either in cash or in other property of the inheritance by just rules, and the order of March 19, 1959 approving the final report of the accountant-partitioner will also be modified insofar it did not acknowledge that faculty to the legitimate children; and considering that *this inheritance has not been divided for nearly 14 years*, the trial court should grant a brief term so that the legitimate children of the predecessor may proceed to make use of said faculty pursuant to the aforesaid section, if no friendly agreement were possible among the brothers and sisters affected by its exercise, and the trial court should order, in time, that the proper modifications be made in the final report.